UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
DAVID L. MORSEMAN,

                              Plaintiff,          07-CV-6466-T

              v.                                  **DECISION**
                                                  **and ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security

                              Defendant.
_____

### INTRODUCTION

        Plaintiff David L. Morseman ("Plaintiff") brings this action
pursuant to the Social Security Act § 216(I) and § 223, seeking
review of a final decision of the Commissioner of Social Security
("Commissioner" or "Defendant"), denying his applications for
Disability Insurance Benefits ("DIB") and Supplemental Security
Income ("SSI"). Specifically, Plaintiff alleges that the decision
of Administrative Law Judge ("ALJ") Jasper J. Bede, denying his
application for benefits was not supported by substantial
evidence and was contrary to applicable law.

        The Commissioner moves for judgment on the pleadings
pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"). Plaintiff moves
for judgment on the pleadings on grounds that the ALJ's decision
was not supported by substantial evidence. For the reasons set
forth below, I hereby deny Defendant's motion for judgment on the
pleadings, grant Plaintiff's motion for judgment on the
pleadings, reverse the decision of the Commissioner, and remand

this claim to the Commissioner for calculation and payment of benefits.

## BACKGROUND

On July 28, 2003, Plaintiff, who was then 41 years old, filed an application with the Social Security Administration for Supplemental Security Income (Tr. 63). He applied for Disability Insurance Benefits on August 13, 2003 (Tr. 64-66). Plaintiff claimed an inability to work since July 6, 2003 (Tr. 64) due to a back injury (Tr. 78). Plaintiff's applications were denied initially on November 5, 2003 (Tr. 49-52). He then filed a timely request for a hearing before an ALJ (Tr. 53). On September 9, 2005, Plaintiff appeared, represented by counsel, at an administrative hearing before ALJ Bede in Corning, New York (see Tr. 229-260). Plaintiff, as well as a vocational expert, appeared in person and testified.

In a decision dated September 15, 2005, ALJ Bede found that although Plaintiff's back injury was severe, Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 17-23). Plaintiff appealed that decision to the Social Security Appeals Council ("Appeals Council") on September 29, 2005 (Tr. 12-13). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 8, 2007 (Tr. 4-6). On September 24, 2007, Plaintiff filed this action appealing the Commissioner's decision.

In finding that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administration's five-step evaluation process for considering an application for DIB or SSI. See 20 C.F.R. §§ 404.1520, 416.920. Under step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (Tr. 19). At step two, the ALJ found that Plaintiff had a "severe" back impairment, which significantly restricted Plaintiff from performing some work-related activities (Tr. 19). At step three, he found that Plaintiff's impairments were not severe enough to meet or medically equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4 (Tr. 19). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work, which included work as a cutting machine operator, welder, robot welder, finisher, and landscaper. (Tr. 22).

The ALJ then turned to step five of the analysis, which calls for a determination of whether or not there are jobs that exist in significant numbers in the national economy that the claimant can perform (Tr. 22-23). At this step, the ALJ found that Plaintiff was capable of performing a full range of sedentary work (Tr. 20-22). Upon finding that Plaintiff had only exertional limitations, the ALJ applied the Medical-Vocational guidelines found in Appendix 2 of Subpart P of section 404 of the

Regulations (Tr. 23). Based on Plaintiff's age (43 at the time of the ALJ's decision), his educational level (less than a 9th grade education), and his work experience (heavy to very heavy and unskilled work), the ALJ applied Medical Vocational Rule 201.24 and found that Plaintiff was not disabled, and, therefore, was ineligible for DIB or SSI (Tr. 23).

## DISCUSSION

### I.    Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. This section has been made applicable to Disability Insurance Benefits cases and Supplemental Security Income cases by 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) directs that when considering such a claim, the district court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing court does not try a benefits case de novo). The court also is authorized to review the legal standards

employed by the Commissioner in evaluating the plaintiff's claim. The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." <u>Lynn v. Schweiker</u>, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Plaintiff and the Commissioner each move for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings in favor of the Commissioner may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Commissioner's determination will not be upheld if it is not supported by substantial evidence contained in the record or if it is based on legal error. <u>Grey v. Heckler</u>, 721 F.2d 41, 44 (2d Cir. 1983); <u>see also</u> <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979). A District Court should order payment of DIB or SSI benefits in cases where the record contains persuasive proof of disability and remand for further evidence would serve no purpose. <u>See</u> <u>Carroll v. Secretary of Health and Human Serv.</u>, 705 F.2d 638, 644 (2d Cir. 1981).

## II.   The evidence in the record demonstrates that Plaintiff is disabled.

I find that the record contains substantial evidence that Plaintiff is disabled under the meaning of the Social Security Act. At the time of the hearing before the ALJ, Plaintiff, a 43 year old male, stood five feet tall and weighed 97 pounds (Tr. 233-34). He lived alone in a mobile home (Tr. 244). On July 6, 2003, Plaintiff was thrown from his motorcycle while riding at 40 to 50 miles per hour (Tr. 112-13). Upon admittance to the emergency room at Schuyler Hospital, Plaintiff was suffering severe back pain, was acutely tender over the lower thoracic spine, had tenderness with any attempted movement, was not able to ambulate, had difficulty sitting up, and was unable to lay flat on his back (Tr. 112-15). X-rays and CT scans performed over the period from July 6, 2003 through September 12, 2003 revealed that Plaintiff suffered injuries which included a coronal fracture through the T10 vertebrae, some kyphosis at the fracture site, a possible fracture of T9, possible herniation of disc material into the endplate, degenerative disc disease in the lumbar spine at L1-L2, and bilateral spondylosis at L5 (Tr. 115, 122, 126-27, 130, 146, 148). Upon his discharge from Arnot Ogden Medical Center on July 11, 2003, Plaintiff was prescribed one Vicodin ES every four hours for pain control; he also received a brace for the thoracic spine which he was advised to wear for at least three months (Tr. 125).

Since the initial accident, Plaintiff has consistently reported pain in the areas of his back that were injured during the motorcycle accident (see, e.g., Tr. 135, 151, 152, 153, 172, 199, 202, 204, 205). He has consistently taken prescription pain medications and muscle relaxers since he incurred the initial back injuries (see, e.g., Tr. 151, 199, 204, 205). Plaintiff's injuries were aggravated in July and September of 2004 (see Tr. 151, 152).

Plaintiff suffered a neck injury when he fell off of a roof on December 3, 2002 (Tr. 172). He subsequently underwent surgery in which two of his cervical vertebrae were fused (Tr. 172). From October 3, 2003 until December 3, 2003, Plaintiff underwent physical therapy at Corning Hospital for that injury (Tr. 166-174). On October 6, 2003, a physical therapist noted that Plaintiff was suffering intermittent headache symptoms, intermittent discomfort between his shoulder blades, periodic dull ache and stiffness in his right upper extremity, decreased range of motion in his shoulders, increased shoulder girdle discomfort with all shoulder motion, and diminished tolerance for dressing, driving, and lifting activities (Tr. 172). On November 16, 2004, Plaintiff underwent surgery to repair an inguinal hernia which he incurred in early September of 2004 (Tr. 151, 155-158, 181-95). While these injuries appear to be unrelated to the injuries Plaintiff incurred in the motorcycle accident of

July 6, 2003, they should not be overlooked when assessing his claim for disability.

Plaintiff's treating physician determined that Plaintiff should not lift or carry weight in a competitive work situation, that Plaintiff should never stoop, twist, crouch, or squat, that he requires a job that permits shifting positions whenever necessary from sitting, standing, or walking, and that Plaintiff is not capable of tolerating the work stress associated with even "low stress" jobs (Tr. 160-62). Concerned with Plaintiff's whole medical picture, a second examining physical therapist at Corning Hospital, in a comprehensive evaluation dated July 23, 2004, noted that Plaintiff suffers from severely reduced mobility due to back pain and that Plaintiff "presents with significant dysfunction" (see Tr. 197, 199).

Plaintiff testified that at times he must lie down in his bed to alleviate his back pain, that he cannot lift more than three pounds without back pain, that he sometimes suffers such intense pain that he cannot sleep without taking 550 to 750 milligrams of Vicodin (see Tr. 241, 249-50, 251, 256). He testified that if he sits in a regular chair for too long his pain will increase enough that he must take pain medication or lie down for almost an hour to alleviate the pain (Tr. 244). Sometimes he wakes up in the middle of the night and is unable to fall back asleep for several hours, if at all (Tr. 245, 249). His

pain prevents him from driving unless he absolutely must do so (Tr. 249).

Indeed, the vocational expert who testified at Plaintiff's hearing noted that if Plaintiff's testimony was credible, he would not be able to perform the requirements of any competitive work (Tr. 258). I find the discourse between the ALJ and the vocational expert to be revealing, both in regards to the ultimate finding as to disability and to the ALJ's strained credibility finding. During the hearing, the ALJ inquired of the vocational expert: "[I]f I were to accept the claimant's testimony as presented today, in your opinion, could he perform requirements of any competitive work?" (Tr. 258). The vocational expert responded: "I would say no, according to if you gave credibility to his testimony, he would not be able to endure the 6 to 8-hour workday on a 5-day a week basis" (Tr. 259). The vocational expert continued: "With the interrupted sleep pattern and the necessity on some days to lie down, I don't think any employer would allow a person to lie down during the course of a regular workday" (Tr. 259). This exchange highlights the importance of the ALJ's credibility finding. According to the vocational expert, a finding of credibility would have necessitated a finding that Plaintiff is not able to perform the requirements of competitive work, and, thus, a determination that Plaintiff was disabled. Conversely, a finding of non-credibility

would enable the ALJ to find that Plaintiff was capable of performing some work and was, therefore, not disabled.

Based on a review of the record, I find that there is substantial evidence to find Plaintiff disabled at step five of the evaluation process.

### III.   The ALJ's decision was not supported by substantial evidence and was not in accordance with law.

The Commissioner contends that the medical evidence in the record supports a finding of no disability for the period from July 6, 2003 through September 15, 2005. The Plaintiff argues, _inter alia_, that the ALJ, in determining Plaintiff's residual functional capacity at step five of the five-step analysis, failed to apply the appropriate legal standards, improperly discounted Plaintiff's subjective testimony, improperly substituted his own judgment regarding medical issues, and failed to follow the Second Circuit's treating physician rule. I find Plaintiff's arguments to be meritorious on each of these accounts, as explained below.

A.   The ALJ's credibility analysis did not conform to the appropriate legal standards set forth in 20 C.F.R. §§ 404.1529 and 416.969.

At step five of the sequential evaluation process, the ALJ considers the claimant's residual functional capacity along with his or her vocational factors (including age, education, and work experience) to determine whether the claimant can make an

adjustment to other work. 20 C.F.R. §§ 404.1520, 416.920. The claimant's residual functional capacity is the most a claimant can still do in a work setting despite his or her physical and mental limitations. Id. § 404.1545(a)(1). In assessing the claimant's residual functional capacity, the ALJ must consider, inter alia, the claimant's subjective testimony pertaining to the limitations from his or her impairments that result from symptoms such as pain. Id. § 404.1545(e). The regulations recognize that a claimant's impairments, and any related symptoms, such as pain, may cause physical limitations that affect what the claimant can do in a work setting. See id. § 404.1545(a)(1). In considering a claimant's subjective testimony of pain, the ALJ must determine whether the claimant has produced objective medical evidence of one or more impairments, and demonstrated that the impairment or combination of impairments suffered by Plaintiff could reasonably be expected to produce some degree of pain. See id. §§ 404.1529, 416.929. In the present case, the ALJ found that Plaintiff had an impairment which would reasonably be expected to cause his alleged back pain (Tr. 22).

Once the claimant has established a medically determinable impairment that could reasonably be expected to produce some degree of pain, the ALJ makes a finding concerning the credibility of the claimant's statements. SSR 96-7p; see also 20 C.F.R. §§ 404.1529, 416.929. In doing so, the ALJ must properly evaluate the claimant's subjective claims in the context of the

entire record. SSR 96-7p. The ALJ's disability determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

ALJ Bede found Plaintiff's subjective complaints concerning the intensity, duration, and limiting effects of the pain to be not entirely credible (Tr. 22). In making the credibility finding, ALJ Bede relies, in part, on his own lay opinion regarding manifestations of pain (see Tr. 22). Specifically, the ALJ determined that:

> "[M]ost organic diseases produce manifestations other than pain and it is possible to evaluate the underlying processes and degree of resultant impairment by considering all of the symptoms. *Generally*, when an individual has suffered pain over an extended period, there will be observable signs such as significant loss of weight, an altered gait or limitation of motion, local morbid changes, or poor coloring or station . . . None of the above signs of chronic pain are evident. While not conclusive by itself, this factor contributes to the determination that the claimant is not disabled as a result of pain."

(Tr. 22) (emphasis added).

ALJ Bede's statement constitutes a medical standard authored by the ALJ and not supported by any medical evidence in the record, as required by 96-7p. See also 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (stating that medical opinions are "statements from physicians and psychologists or other acceptable

medical sources"). First, the ALJ's statement refers to claimants *generally*, rather than to Plaintiff's individual situation. Further, the reasons for the ALJ's credibility finding must be grounded in the evidence relevant to this claimant. SSR 96-7p. The ALJ cannot base the finding of credibility "on an intangible or intuitive notion about an individual's credibility." Id. Moreover, the ALJ cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (rejection of a claimant's allegations of pain was improper where the ALJ relied on his own lay opinion about manifestations of pain). Accordingly, ALJ Bede improperly relied upon his own lay opinion in finding Plaintiff's subjective complaints of pain to be not entirely credible.

The ALJ's assertion that "[t]he claimant's daily activity level is consistent with an ability to perform sedentary work" does not contain the level of specificity or clarity required by SSR 96-7p. In making his credibility finding, the ALJ did not apply the required factors set forth in 20 C.F.R. § 404.1529(c)(3). Factors the ALJ failed to address include: the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications Plaintiff takes or has taken to alleviate the pain; treatment, other than medication, that the Plaintiff has received for relief of pain;

and measures Plaintiff has used to relieve pain, such as lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc. (Tr. 22)

The record indicates that Plaintiff's reports of pain have been consistent throughout the claimed period of disability. Plaintiff repeatedly reported elevated levels of pain to his treating physician and physical therapists. Reports from various medical personnel, dated July 12, 2004 and July 23, 2004, indicate that Plaintiff complained of increased pain and burning in his back (Tr. 152), "occasional burning or sharp pains across his mid low back" (Tr. 199), and "pressure in the middle of his back [that] never goes away" (Tr. 199). On July 15, 2005, Plaintiff's treating physician reported that Plaintiff jumps at any palpitation of his back (Tr. 202).

The record also includes evidence that Plaintiff suffers from reduced mobility due to the back pain from which he suffers. Findings from an initial evaluation for physical therapy, dated July 23, 2004, state that Plaintiff has "increased pain with repeated thoracic flexion and thoracic extension, severe limitation of thoracic flexion and extension, a 50% limitation in all directions of lumbar flexion, extension, and side gliding right and left (Tr. 199).

The assessment of Plaintiff's treating physician regarding Plaintiff's pain indicates that the pain is disabling. In a medical source statement, dated March 14, 2005, the treating

Page -14-

physician reported that during a typical workday, Plaintiff suffered from constant pain that was severe enough to interfere with the attention and concentration needed to perform even simple work tasks (Tr. 160).

In an effort to alleviate the back pain, Plaintiff, since the claimed disability onset date, has taken Ultram, Vioxx, Vicodin, Neurontin, Hydrocodone, and muscle relaxers (see Tr. 133, 151, 199, 204, 205, 251, 255).

I find that the ALJ's reasons for discrediting Plaintiff's subjective complaints of disabling pain do not provide a valid basis for rejecting those complaints, and, therefore, I find that the ALJ's finding of credibility is not supported by substantial evidence in the record. I further find that Plaintiff's subjective testimony regarding the intensity, duration, and limiting effects of his pain is supported by the medical evidence of record and is, therefore, credible under SSR 96-7p.

B.   The ALJ failed to give proper weight to the opinions of Plaintiff's treating physician.

Plaintiff contends that the ALJ, in determining that Plaintiff had the residual functional capacity to perform a full range of sedentary work, failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Michael Cilip.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. See id. §§

404.1527, 416.927; <u>see also</u> <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998) (treating physician rule grants controlling weight to opinion of treating physician). Courts in this Circuit require than an ALJ provide explanations, or "good reasons," when choosing to discount the opinion of a treating physician. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); <u>see also</u> <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998). When the ALJ does not give the treating physician's opinion controlling weight, he must consider several factors in deciding what weight to give to the opinion of the treating physician, including: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. <u>See</u> 20 C.F.R. §§ 404.1527, 416.927(d).

Plaintiff's treating physician, Dr. Cilip, in a medical opinion dated March 14, 2005, determined that Plaintiff should never lift or carry any weight in a competitive work situation, that he should never stoop, twist, crouch/squat, climb ladders, or climb stairs, that he requires a job that permits shifting positions at will from sitting, standing, or walking, and that he is incapable of tolerating the work stress associated with even "low stress" jobs (Tr. 160-62). ALJ Bede did not identify what weight he afforded Dr. Cilip's opinions as to Plaintiff's impairments, nor did he provide "good reasons" for not affording

Dr. Cilip's opinions controlling weight. Moreover, the ALJ incorrectly referenced Dr. Cilip's evaluation of Plaintiff's ability to lift weight. ALJ Bede stated that Dr. Cilip's evaluation indicated Plaintiff *could* lift and carry 10 pounds or less (Tr. 20), but in Dr. Cilip's March 14, 2005 medical source statement, he determined that Plaintiff was *not* capable of lifting *even less than* 10 pounds in a competitive work situation (Tr. 161).

The regulations note that the ALJ generally will "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(d)(1). Similarly, the ALJ generally will give more weight to opinions from the claimant's treating sources. Id. § 404.1527(d)(2). The regulations also note that the ALJ should give the opinion of a treating source more weight than that of a nontreating source when the treating source has seen the claimant a number of times and long enough to have obtained a longitudinal picture of the claimant's impairment. Id. § 404.1527(d)(3).

I find that the ALJ erred in failing to identify what weight he afforded Dr. Cilip's medical opinion and failed to provide explanations, or "good reasons," for apparently discounting Dr. Cilip's medical opinions.

C.   <u>The ALJ failed to apply the appropriate legal standards in determining Plaintiff's residual functional capacity.</u>

In determining whether or not a claimant is disabled, the ALJ uses the claimant's residual functional capacity to determine at which exertional level ("sedentary," "light," "medium," "heavy," or "very heavy") the claimant is capable of performing. <u>See</u> 20 C.F.R. §§ 404.1567, 416.967; <u>see also</u> SSR 83-10, SSR 86-9p. In assessing a claimant's residual functional capacity, the ALJ must assess the claimant's ability to perform each of the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 1545(a)(4). In order to find that a claimant is capable of performing work at a certain exertional level, the ALJ must determine that the claimant is capable of doing the full range of work required of that exertional level. SSR 96-8p. The regulations acknowledge that "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, . . . or other physical functions (including . . . stooping or crouching), may reduce [a claimant's] ability to do past and other work." 20 C.F.R. § 404.1545(b).

ALJ Bede concluded that Plaintiff "has the residual functional capacity to perform sedentary work" (Tr. 20). Sedentary work requires lifting up to 10 pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, sitting for approximately 6 hours of an

8-hour workday, and standing or walking for up to 2 hours of an 8-hour workday. See 20 C.F.R. §§ 404.1567, 416.967; SSR 83-10. ALJ Bede found that Plaintiff was capable of lifting up to 10 pounds at a time, including dockets, files, ledgers, and small tools (Tr. 20), but failed to assess Plaintiff's ability to sit for 6 or more hours in an 8-hour workday. Moreover, in assessing the claimant's residual functional capacity, the ALJ must consider all of the relevant medical and other evidence of record. 20 C.F.R. § 404.1545(a)(3). However, the ALJ failed to address the opinion of Plaintiff's treating physician that Plaintiff requires a job that permits shifting positions at will from sitting, standing, or walking (<u>see</u> Tr. 161) or that Plaintiff should never stoop or bend in a competitive work situation (<u>see</u> Tr. 162).

In arriving at his determination, the ALJ erroneously assessed the evidence before him on several occasions. He misstated at two different points in his decision that Plaintiff had the capacity to perform "a full range of *light* work" rather than sedentary work (Tr. 20, 22) (emphasis added). The ALJ also incorrectly assessed the medical source statement from Dr. Leo J. Corazza, a non-examining consulting physician. According to ALJ Bede, Dr. Corazza "determined that the [Plaintiff] could perform work of a light exertional level" (Tr. 21). However, the interrogatories completed by Dr. Corazza indicate that the doctor believed Plaintiff was capable of standing and/or walking for 2

hours in an 8-hour workday, but was not capable of standing and/or walking for 6 hours in an 8-hour workday (see Tr. 142). This is significant because light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Minimally, standing or walking for 2 hours in an 8-hour workday is consistent with sedentary work. See SSR 83-10. As previously mentioned, the ALJ also incorrectly referenced Dr. Cilip's evaluation of Plaintiff's ability to lift weight: ALJ Bede incorrectly stated that Dr. Cilip found Plaintiff to be able to lift and carry 10 pounds or less (Tr. 20), but Dr. Cilip actually determined that Plaintiff was *not* capable of lifting even less than 10 pounds (Tr. 161). Such errors cannot be completely overlooked.

I find that the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's residual functional capacity. I further find that the ALJ's finding that Plaintiff could engage in sedentary work is not supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, I find that the Commissioner's decision denying Plaintiff DIB or SSI benefits was not in accordance with law and not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. I, therefore, grant judgment on the pleadings in favor of the

Plaintiff and remand this matter to the Social Security Administration for calculation and payment of benefits. Defendant's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.


s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
July 22, 2008